141 P.3d 1079

Brooke DEEDS, a single woman,
Plaintiff–Respondent,

v.

REGENCE BLUESHIELD OF IDAHO,
Defendant–Appellant.

No. 31180.

Supreme Court of Idaho,
Boise, April 2006 Term.

July 28, 2006.

Ramsden & Lyons, Coeur d'Alene, for appellant. Michael E. Ramsden argued.

Racine Olson Nye Budge & Bailey, Chtd., Pocatello, for respondent. Richard A. Hearn argued.

TROUT, Justice.

This case involves the enforceability of an arbitration agreement under a health care insurance policy. Appellant Regence Blue Shield of Idaho (Regence) appeals from a district court order and decision, concluding the disputed arbitration agreement is unenforceable and vacating the court's prior order compelling arbitration.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Respondent Brooke Deeds (Deeds), the insured, filed a complaint against Regence after it declined to pay for Deeds' treatment for injuries resulting from a motor vehicle accident. In answer to the complaint, Regence demanded the claim be arbitrated pursuant to a provision in the health insurance policy that mandates "arbitration in accordance with the applicable rules of the American Arbitration Association [AAA]". The district judge agreed and stayed the proceedings, pending arbitration.

Thereafter, Deeds discovered that after the health insurance policy was written, the AAA had implemented a policy, declaring that in health insurance cases "it will no longer accept the administration of cases involving individual patients without a post-dispute agreement to arbitrate" signed by both parties. Deeds refused to sign a post-dispute agreement and filed a motion to vacate the arbitration order. The district court concluded that based on the change in AAA's policy, the entire arbitration agreement failed. It therefore granted Deeds' motion and lifted the order to arbitrate, ordering the matter to trial.

Regence then filed a Notice of Appeal pursuant to I.C. § 7–919 and the matter is now before us without any final resolution as to the remainder of the case. In addition to the briefing on the enforceability of the arbitration clause, this Court requested supplemental briefing regarding the issue of whether or not this appeal originates from a final, appealable order or judgment under I.A.R. 11.

## II.

### STANDARD OF REVIEW

■ "On appeal, this Court must address finality even if the parties fail to raise it because the issue is jurisdictional." *Hartman v. Double L Mfg. Co.*, 141 Idaho 456, 457, 111 P.3d 141, 142 (2005). "In disputes involving arbitration, this court has stated: 'The question of arbitrability is a question of law properly decided by the court. When questions of law are presented, this court exercises free review....'" *Murphy v. Mid-West Nat. Life Ins. Co. of Tennessee*, 139 Idaho 330, 331 78 P.3d 766, 767 (2003) (internal citations omitted).

## III.

### DISCUSSION

The principal issues on appeal are (1) whether the district court's Order Lifting Partial Stay and Vacating Arbitration Order is a final appealable order; and (2) whether the arbitration clause in the health insurance policy is enforceable. Deeds also requests attorney fees on appeal.

#### A. Final appealable order

Idaho Code § 7–919 states, in pertinent part, "(a) [a]n appeal may be taken from: (1) An order denying an application to compel arbitration...." I.C. § 7–919(a)(1).[1] By enacting I.C. § 7–919, the legislature, as a substantive matter, clearly created the right to appeal an order denying a motion to compel arbitration. Regarding the procedure for bringing the appeal, however, I.C. § 7–919 specifically states: "(b) The appeal shall be taken in the manner and to the same extent

---

1. In all practical effect, the district court's decision "order[ing] that resolution of this matter proceed through litigation" and finding the arbitration clause unenforceable, equates to a denial of Regence's application to compel arbitration.

"Whether an instrument is an appealable order or judgment must be determined by its content and substance, and not by its title." *Howell v. Reimann*, 77 Idaho 84, 87, 288 P.2d 649, 651 (1955).

as *from orders or judgments in a civil action.*" I.C. § 7–919(b). In turn, I.C. § 13–201 provides the procedure for appealing civil judgments and orders: "An appeal may be taken to the Supreme Court from a district court in any civil action by such parties from such orders and judgments, and within such times and in such manner as prescribed by Rule of the Supreme Court." I.C. § 13–201. *See Camp v. East Fork Ditch Co., Ltd.,* 137 Idaho 850, 860, 55 P.3d 304, 314 (2002) ("The right to appeal to this Court as a matter of right is governed by the Idaho Appellate Rules.").

■ Analogous to the directives contained in I.C. §§ 7–919 and 13–201, the Idaho legislature created the right to appeal from an Industrial Commission order in I.C. § 72–724, and likewise instructed the appeal be brought pursuant to Supreme Court Rules: "An appeal may be made to the Supreme Court by such parties from such decision and order of the [Industrial] commission and within such times and in such manner as prescribed by Rule of the Supreme Court." Despite the language in I.C. § 72–724 creating the right to appeal from an Industrial Commission order, this Court has held on numerous occasions that this type of order is only appealable if, under our rules, it is final. *See Hartman v. Double L Mfg.,* 141 Idaho 456, 111 P.3d 141 (2005) (holding Industrial Commission's order did not constitute a final appealable order under Idaho Supreme Court rules and was, therefore, not appealable). Thus, while the legislature originally creates the right to appeal, it is this Court's responsibility to then determine the procedures for bringing the appeal. This determination includes ruling on the finality of a particular judgment or order.

Under our rules, in a civil action "[a]n appeal as a matter of right may be taken to the Supreme Court from ... [j]udgments, orders and decrees which are final, including orders of the district court granting or denying peremptory writs of mandate and prohibition." I.A.R. 11(a)(1). This Court has held an order is final under I.A.R. 11 "if the instrument 'ends the suit,' 'adjudicate(s) the subject matter of the controversy,' and represents a 'final determination of the rights of the parties'...." *Idah Best, Inc. v. First Sec.*

*Bank, N.A., Hailey Branch,* 99 Idaho 517, 519, 584 P.2d 1242, 1244 (1978).

■ An order denying a motion to compel arbitration does not meet our Rule 11 requirements by ending the suit in its entirety. Yet, the legislature has indicated these orders may be appealed, and as a practical matter, these orders *are* final with respect to arbitration. It does not make sense to force parties to an arbitration agreement to proceed through litigation only to discover later the matter should have been arbitrated. Thus, we hold that an order denying a motion to compel arbitration (or here, an order vacating an earlier order to arbitrate) is final for the purposes of our rules and is therefore appealable as a matter of right.

## B. Enforceability of arbitration clause

■ Under the Uniform Arbitration Act "arbitration and agreements to arbitrate are encouraged and given explicit recognition as effective means to resolve disputed issues." *Lovey v. Regence BlueShield of Idaho,* 139 Idaho 37, 41, 72 P.3d 877, 881 (2003) (quoting *Loomis, Inc. v. Cudahy,* 104 Idaho 106, 108, 656 P.2d 1359, 1361 (1982)). In this case, the arbitration clause in the health insurance policy provides as follows:

**ARBITRATION**

Any controversy or claim arising out of or relating to this Policy, or the breach thereof, shall be settled by arbitration *in accordance with the applicable rules of the American Arbitration Association* and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitration shall be held at such place as may be selected by mutual agreement. All fees and expenses of the arbitration shall be borne by the parties equally. However, each party to the arbitration proceeding shall bear the expenses of its own counsel, experts, witnesses, and preparation and presentation of proofs. (emphasis added).

Because under its new policy the AAA will not designate an AAA arbitrator to administer the dispute without a post-dispute agreement to arbitrate, Deeds claims the entire arbitration clause fails. This Court sees no

reason, however, why the arbitration cannot proceed "in accordance with the applicable rules of the AAA" using a different arbitrator. With the exception setting forth the method for parties to appoint a designated AAA arbitrator, the AAA rules governing this dispute are simple procedural rules of general applicability. For example, the rules sets forth time frames for filing various documents, the manner in which the final award will be delivered and generic evidentiary guidelines, giving the arbitrator broad discretion to allow in evidence. There is no reason only an AAA arbitrator could comply with these basic procedures.

◼ In addition, there is no evidence the AAA itself is central to the agreement to arbitrate. "Only if the choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern' will the failure of the chosen forum preclude arbitration." *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217 (11th Cir.2000). Deeds misguidedly directs this Court to case law in which the courts held selection of the forum was central to the parties' agreement to arbitrate and, therefore, refusal by the organization to hear the case rendered the arbitration agreement unenforceable. *See In re Salomon Inc.*, 68 F.3d 554 (2nd Cir.1995); *Smith Barney, Inc. v. Critical Health Sys. of North Carolina, Inc.*, 212 F.3d 858 (4th Cir. 2000); *Alan v. UBS PaineWebber*, 111 Cal. App.4th 217, 3 Cal.Rptr.3d 377 (2003). These cases involve federal securities law and the decision to arbitrate before a self-regulatory organization (SRO), a forum which must operate in strict compliance with the Securities and Exchange Act of 1934(SEC):

> "As part of the comprehensive system of federal regulation of the securities industry, the Exchange Act authorizes SROs within the securities to self-regulate their members subject to oversight by the United States Securities and Exchange Commission (SEC). SROs are subject to extensive oversight, supervision, and control by the SEC on an ongoing basis.... The Exchange Act directs SROs to adopt rules and by-laws that conform with the Exchange Act.... With some exceptions ... the SEC must approve all SRO rules, policies, practices, and interpretations prior to

their implementation.... Each SRO must comply with the provisions of the Exchange Act as well as its own rules...."

*Alan*, 111 Cal.App.4th at 222, 3 Cal.Rptr.3d at 382 (quoting *Mayo v. Dean Witter Reynolds, Inc.*, 258 F.Supp.2d 1097, 1101–02 (N.D.Cal.2003)).

◼ In contrast to the SROs, which are closely governed by the Securities and Exchange Commission and have developed complex regulatory schemes for overseeing arbitration of securities disputes, the AAA simply provides a list of potential arbitrators from which the parties can choose, as well as procedural rules for conducting the arbitration, and coordinates the logistics of setting up the parties with the chosen arbitrator. Here, no one has argued the dominant intent of the parties was that *only* an AAA arbitrator could handle the dispute or that an AAA arbitrator, or the AAA as an organization, has some type of special expertise. Unlike the SROs, arbitration "in accordance with the applicable rules of the AAA" is not dependent on the AAA overseeing the arbitration.

◼ The only provision of these rules that fails is the method for appointing an arbitrator because the AAA rules provide for the appointment of a designated AAA arbitrator. The Idaho legislature, however, has explicitly addressed this type of situation. Specifically, I.C. § 7–903 serves as a savings clause for an arbitration agreement when the method of appointing an arbitrator fails:

> If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed. In the absence thereof, or *if the agreed method fails or for any reason cannot be followed,* or when an arbitrator appointed fails or is unable to act and his successor has not been duly appointed, *the court on application of a party shall appoint one or more arbitrators.* An arbitrator so appointed has all the power of one specifically named in the agreement. (emphasis added).

Since the AAA's method of appointing an arbitrator can no longer be followed, we remand the case to the trial court to appoint another arbitrator pursuant to I.C. § 7–903, who shall proceed with the arbitration in

accordance with the AAA rules governing the arbitration.

#### C. Attorney fees

Deeds requests attorney fees on appeal under I.C. § 41–1839 and § 12–121. I.C. § 41–1839 provides for the award of attorney fees if the insurance company fails to pay an amount justly due under the policy within thirty days after proof of loss. Here, although an action has been brought in court to recover under the terms of the insurance policy, there has been no determination of what amount, if any, is justly due under the policy. Because the substantive claim of this dispute, i.e., the amount owed to Deeds, if any, under the policy has not been resolved, we decline to award attorney fees under I.C. § 41–1839. In addition, because we find no evidence that Regence has acted unreasonably in these proceedings, Deeds is not entitled to attorney fees under I.C. § 12–121.

### IV.

### CONCLUSION

We reverse the district court decision and remand the case to the district court to appoint another arbitrator pursuant to I.C. § 7–903, who shall proceed with the arbitration in accordance with the AAA rules governing the arbitration. We award costs on appeal to Regence.

Justice BURDICK concurs.

Justice EISMANN, concurring in part and concurring in the result in part.

I concur in Parts I, II, III.B, III.C, and IV. I concur in the result in Part III.A.

Part III.A. of the majority opinion eviscerates the legislature's power to "provide a proper system of appeals" under Article V, § 3, of the Idaho Constitution. This Court has previously recognized that the legislature's power under this constitutional provision includes the right to determine whether appeals can be taken immediately from decisions that are not yet final.

In *Evans State Bank v. Skeen,* 30 Idaho 703, 167 P. 1165 (1917), this Court addressed the issue of whether an appeal could be taken directly from interlocutory orders appointing a receiver of mortgaged personal property,

denying and overruling a motion to vacate and set aside the receivership, and authorizing and directing the sale of the property. This Court held that it could not because the legislature had not conferred a right to appeal such interlocutory orders pursuant to its power to "provide a proper system of appeals" under Article V, § 3, of the Idaho Constitution. In so holding, this Court stated:

> The right to appeal, in this state, is conferred by legislative authority, and if it exists it must be found in the Constitution or statutes. It has been contended that all orders and decisions of district courts are made appealable by section 9, art. 5, of the Constitution, wherein it is provided that the Supreme Court shall have jurisdiction to review, upon appeal, any decision of the district courts, or the judges thereof, but this section must be read and considered together with section 13 of the same article, directing that the Legislature shall provide a proper system of appeals. In the discharge of the duty imposed upon it by section 13, art. 5, of the Constitution, above mentioned, the Legislature, in section 4800, Rev.Codes, has provided:
>
> "A judgment or order, in a civil action, except when expressly made final, may be reviewed as prescribed in this Code, and not otherwise."
>
> Section 4807, Rev.Codes, as amended by chapter 111, Sess. Laws 1911, p. 367, and by chapter 80, Sess. Laws 1915, p. 193, designate the judgments and orders of district courts from which appeals may be taken to this court, and they are: A final judgment in an action or special proceeding commenced in the court in which the same is rendered; a judgment rendered on appeal from an inferior court; a judgment rendered on an appeal from an order, decision, or action of a board of county commissioners; an order granting or refusing to grant a new trial; an order granting or dissolving an injunction; an order refusing to grant or dissolve an injunction; an order dissolving or refusing to dissolve an attachment; an order granting or refusing to grant a change of place of trial; any special order made after final judgment; and an interlocutory judgment in actions

for partition of real property. *While other legislative enactments provide for appeals from the district courts to this court in certain cases, none of them apply to the question here under consideration.*

30 Idaho at 704–05, 167 P. at 1165–66 (emphasis added). The reference in the first sentence of the above quotation to the "right to appeal" being conferred by legislative authority includes when the appeal may be taken. That was the sole issue in that case. If the legislature had no authority to grant a right to directly appeal an interlocutory order, it would not have been necessary to address whether it had granted the right to appeal the interlocutory orders at issue in the case.

In *State ex rel. State Board of Medicine v. Smith,* 80 Idaho 267, 328 P.2d 581 (1958), this Court again recognized that the legislature has the power to grant the right to an immediate appeal from an interlocutory order. In dismissing an appeal because the legislature had not granted a right to appeal from an order sustaining a demurrer, this Court stated:

> Section 13 of Article 5, in part provides: ' * * * but the legislature shall provide a proper system of appeals, * * *.' By the provisions of Chapter 2, Title 13, I.C., the legislature has provided, pursuant to the mandate of the constitution, a proper system of appeals from the district courts to the supreme court.
>
> *Where no direct appeal from an intermediate decision is provided by the legislature, such decision is reviewable only upon appeal from the final judgment.* The failure of the legislature to provide for a direct appeal from such a decision, is not a denial of, or limitation upon, the jurisdiction of the supreme court to review such decision upon appeal. It is a recognition by the legislature of a truism inherent in a proper system of appeals; namely, to permit an appeal from all intermediate orders and decisions of the district courts would result in such vexatious and intolerable confusion and delay as to render impossible an orderly and expeditious administration of justice by the courts of the state.

80 Idaho at 269, 328 P.2d at 581–82 (emphasis added).

In *Wilson v. DeBoard,* 94 Idaho 562, 494 P.2d 566 (1972), this Court held that an appeal could not be taken from an order denying summary judgment because the legislature had not provided for an appeal from such interlocutory order in the exercise of its power to provide a proper system of appeals. This Court concluded: "It is clear that the appeal attempted to be taken herein is not authorized by the legislature, which, in turn, is constitutionally authorized to prescribe a system of appeals in this state. The motion of the plaintiff is granted and the appeal by the defendant is dismissed." 94 Idaho at 563, 494 P.2d at 567. DeBoard attempted to appeal the order denying his motion for summary judgment before a final judgment was entered in the case, not after.

In *Oneida v. Oneida,* 95 Idaho 105, 503 P.2d 305 (1972), this Court again recognized the legislative power to grant the right to appeal from an interlocutory order. The parties were all shareholders of Oneida, Inc. The central issue in the litigation was whether it was economically feasible to divide the assets of the corporation among the parties. After the district court ruled it was not, the plaintiffs appealed. A statute provided for an appeal from an interlocutory judgment in an action to partition real property, but not from an interlocutory judgment in an action to divide the assets of a corporation. This Court therefore dismissed the appeal because the legislature had not provided for an immediate appeal from the interlocutory order at issue. In so doing, this Court stated:

> The appellants were seeking to partition the assets—both real and personal—of the corporation known as Oneida, Inc. This is not an action 'for partition of real property' within the meaning of I.C. s 13–201. If any label may be applied, this is an action to dissolve and partition the assets of a corporation. *While the legislature has provided for a direct appeal from an interlocutory judgment in an action for partition of real property, it has not provided, for a direct appeal from an intermediate decision in an action for partition of corporate assets.* I.C. s 13–201. The district court's order is an intermediate order reviewable only upon appeal from the final judgment.

95 Idaho at 108, 503 P.2d at 308 (emphasis added).

Ordinarily, the right to appeal is governed by the Idaho Appellate Rules. *See Camp v. East Fork Ditch Co., Ltd.,* 137 Idaho 850, 860, 55 P.3d 304, 314 (2002). That is because Idaho Code § 13–201 provides, "An appeal may be taken to the Supreme Court from a district court in any civil action by such parties from such orders and judgments, and within such times and in such manner as prescribed by Rule of the Supreme Court." In enacting that statute, however, the legislature did not and could not divest itself of its constitutional power to determine whether appeals can be taken immediately from decisions that are not yet final.

Since it is clear that the legislature has the constitutional power to provide for direct appeals from interlocutory orders, the issue is whether it has done so by the enactment of Idaho Code § 7–919. That statute provides:

(a) An appeal may be taken from:

(1) An order denying an application to compel arbitration made under section 7–919, Idaho Code;

(2) An order granting an application to stay arbitration made under section 7–902(b), Idaho Code;

(3) An order confirming or denying confirmation of an award;

(4) An order modifying or correcting an award;

(5) An order vacating an award without directing a rehearing; or

(6) A judgment or decree entered pursuant to the provisions of this act.

(b) The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action.

When deciding whether the legislature intended to grant the right to direct appeals from the orders or judgments listed in subsections (1) through (6) of Idaho Code § 7–919(a), this Court "may also consider the reasonableness of proposed interpretations. 'Constructions that would lead to absurd or unreasonably harsh results are disfavored.'" *Friends of Farm to Market v. Valley County,* 137 Idaho 192, 197, 46 P.3d 9, 14 (2002) (citations omitted).

Idaho Code § 7–919(a) means either that the aggrieved party has the right to an immediate appeal from the orders or judgments listed or that the party only has the right to appeal those orders or judgments after a final judgment is later entered in the lawsuit. As the majority concedes, "It does not make sense to force parties to an arbitration agreement to proceed through litigation only to discover later the matter should have been arbitrated." Therefore, the reasonable construction is that the statute grants the right to appeal those orders or judgments directly, regardless of whether they are final or interlocutory.

The majority relies upon this Court's construction of Idaho Code § 72–724 for the proposition that Idaho Code § 7–919(a) only grants a right to appeal the orders or judgments listed once a final judgment has been entered. There are material differences between the two statutes. Idaho Code § 72–724 provides, "An appeal may be made to the Supreme Court by such parties from such decisions and orders of the commission and within such times and in such manner as prescribed by Rule of the Supreme Court." Unlike Section 7–919(a), it does not list the orders and/or judgments from which appeals may be taken. It simply refers to the rules of this Court. It permits an appeal "from such decisions and orders of the commission ... as prescribed by Rule of the Supreme Court." Idaho Code § 7–919 does not contain any such limitation. There is no reference to the rules of this Court.

Subsection (b) of the statute provides, "The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action." The word "manner" simply refers to the procedure for prosecuting the appeal. The phrase "to the same extent" simply refers to the scope of the appeal. The appellate court is to review it just as it would review an appeal from any order or judgment in a civil action.

Thus, I agree with the result that the order denying arbitration was appealable. In so holding, however, I would simply recognize the legislature's constitutional power to provide for a direct appeal from interlocutory orders.

Chief Justice SCHROEDER concurs.

JONES, J., concurring in part and dissenting part.

I concur with the Court's determination in part IIIA that the district court's order is appealable but I dissent with regard to part IIIB in which the Court concludes that the arbitration clause should be enforced. I would uphold the district court's ruling that arbitration is no longer required under the arbitration clause.

The arbitration clause provides in pertinent part that, "Any controversy or claim arising out of or relating to this Policy, or the breach thereof, shall be settled by arbitration in accordance with the applicable rules of the American Arbitration Association ..." It appears from the record that the AAA adopted a policy after this controversy arose whereby it would no longer arbitrate health care disputes involving individual patients without a post-dispute agreement to arbitrate. This new AAA requirement is spelled out in the Affidavit of Robert Meade, a senior vice president of the AAA. According to Mr. Meade, the AAA implemented a policy, effective on January 1, 2003, whereby it would decline to arbitrate health care disputes between an individual and his or her insurer or provider unless the parties had voluntarily entered into a post-disputed agreement to arbitrate. Mr. Meade's affidavit discloses the policy to be in conformity with the 1998 report of the Commission on Health Care Disputes, which provided in part:

> PRINCIPLE 3: KNOWING AND VOLUNTARY AGREEMENT TO USE ADR
> The agreement to use ADR should be knowing and voluntary. Consent to use an ADR process should not be a requirement for receiving emergency care or treatment. In disputes involving patients, binding forms of dispute resolution should be used only where the parties agree to do so after a dispute arises.

Whether one calls AAA's refusal to arbitrate, without a voluntary post-dispute agreement, a policy, rule, or principle, it is clear the AAA will not arbitrate a health care dispute involving an individual patient unless the parties voluntarily enter into such an agreement. This is more than a forum or arbitrator selection clause. It is a determination by the AAA that it will not get involved in the arbitration of this type of health care dispute unless the parties specifically and voluntarily agree to arbitrate after the dispute arises. The parties in this case agreed that they would arbitrate in accordance with AAA rules and this certainly appears to qualify as such. Deeds has declined to enter into a post-dispute agreement to arbitrate and, therefore, any arbitration, even one conducted by a non-AAA arbitrator, would not comply with basic AAA rules. The district court correctly determined:

> The decision by the AAA that its rules governing arbitration no longer apply to this sort of dispute is certainly more substantive than the personality of the arbitrator. It is the arbitration process itself, that the AAA has addressed. The AAA has acted to remove arbitration from use by the parties.

Under these circumstances, I.C. § 7–903 does not apply. This case does not present a failure in the appointment mechanism, rather a failure in the arbitration process itself. Thus, the arbitration clause is unenforceable and Deeds should be permitted to proceed with her action in district court.